Commonwealth *v.* Molina, Appellant.

Argued September 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Lewis Maltby*, Assistant Defender, with him *John W. Packel*, Assistant Defender, and *Vincent J. Ziccardi*, Defender, for appellant.

*Mark Sendrow*, Assistant District Attorney, with him *Larry D. Feldman* and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., October 28, 1975:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County, Criminal Division, by the defendant-appellant, Adalberta Molina.

The Commonwealth presented testimony from Officer Martinez, a Philadelphia police officer, that on May 23, 1973 at about 1:15 p.m. while having a candy store under surveillance, he observed the defendant at the doorway of the store pass a glazed packet to another person. The man who received the packet was apprehended two blocks away by Officer Martinez who recovered the glazed packet. The defendant was immediately arrested.

The packet seized was found to contain 7.2 grams of a mixture of heroin and reducing sugar which fit the category of heroin as a controlled substance. The defendant was tried before Judge SMITH without a jury. The

defense presented testimony of Henry Szelangowski, who was the man the officer saw make the purchase. He testified that the defendant did not give him the packet. The Commonwealth called the officer in rebuttal who testified that Szelangowski described the defendant to him accurately at the time.

The defendant contends that the rebuttal evidence was used by the court below as substantial evidence to convict. The court below in its opinion held that the rebuttal testimony was only used to impeach the witness's credibility and said:

"As to the above mentioned crime, 'the test to be applied in determining the sufficiency of the evidence, is whether accepting as true all of the evidence, be it direct or circumstantial or both, and all reasonable inferences arising therefrom, upon which if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime of which he has been convicted.' Commonwealth v. Pitts, 450 Pa. 359 (1973).

"In the case at bar, this Court decided the issue of credibility in favor of the Commonwealth.

"The Officer was an eyewitness, who saw the drug transaction by the defendant take place."

It is true that the court below, in an excess of caution, did direct the narcotics agents to take the witness Szelangowski to see pictures to determine whether he could identify the "Pop" he testified he purchased the packet from. The officers then filed a report with the court which was introduced in the record as an exhibit that Szelangowski was unable to identify "Pop" and then agreed to take a lie detector test which he failed.

After conviction, the defendant was placed on probation as he had no prior record.

Judgment of sentence of the court below is affirmed.

DISSENTING OPINION BY SPAETH, J.:

In my view the trial judge applied an improper standard for determining guilt in this case, and I therefore dissent.[1]

Appellant was tried without a jury and was found guilty of delivery of a controlled substance.[2] The evidence produced at trial was as follows. Officer Martinez testified that he observed appellant hand a glazed paper packet to a man later identified as Szelangowski. The officer witnessed the delivery while in his car some twenty-seven feet away. He arrested Szelangowski a few blocks down the street and then returned to the scene of the delivery and arrested appellant. A search of Szelangowski uncovered a packet approximately $3/8''$ by $1\frac{1}{4}''$ containing heroin. Appellant testified that he had never been with Szelangowski on the day of the arrest; and Szelangowski testified[3] that he had not received the heroin from appellant but from a man named "Pop". In rebuttal, Officer Martinez testified that Szelangowski after being arrested, described the man who had given him the heroin, and that the description fit appellant perfectly. After closing arguments, the trial judge found appellant guilty, but immediately after doing so, requested the officer to take Szelangowski to the police station to see if he could identify the person who had given him the heroin. The judge then requested post-trial motions and suggested

---

1. Appellant has raised two other issues, but I shall not discuss them since I believe the one discussed *infra* is sufficient for reversal.

2. Act of April 14, 1972, P.L. 233, No. 64, §13, imd. effective, as amended October 26, 1972, P.L. 1048, No. 263, §1, imd. effective, 35 P.S. §780-113(a)(1).

3. Szelangowski was willing to testify because he had been convicted at an earlier trial.

that defense counsel file a writ of *coram nobis* if Szelangowski made a positive identification.[4]

In order to find a person guilty of a criminal charge, the prosecution must show that he committed all the

4. The record reads:

"THE COURT: Have the defendant stand in this case.

Mr. Molina, on Bill Number 353, July Sessions, 1973, charging you with delivering a controlled substance, the Court finds you guilty.

Now, the Court's standards in determining guilt or innocence is beyond a reasonable doubt. It is not to a degree of certainty. I don't have to be absolutely sure. I just don't have such a doubt in my mind to find the defendant not guilty.

I am sure your attorney, Mr. Maltby, knows well the definition of what reasonable doubt means.

What I am going to do in this case, however, is that I am going to ask the Defender's Association to file written motions for new trial in arrest of judgment, and in the interim I want Officer Martinez and any representative from the narcotic unit to take Mr. Szelangowski down to the narcotics unit and show him pictures and let him see if he can identify a person by the name of Pop.

As I indicated to you, I am convinced beyond a reasonable doubt that this man was the person who conducted the transaction. I analyzed the testimony with great scrutiny and great care because of some of the facts in the case and your excellent cross-examination of the officer indicating a possible inconsistency in his testimony at the preliminary hearing and his testimony at this hearing. However, I did not believe that that inconsistency was of such a nature as would cause me, sitting as a jury, to have a reasonable doubt in this case.

So, my decision, now, is the defendant is guilty. I'm asking the Defender's Association to file written motions in arrest of judgment, motion for new trial. I'm asking that the officer take the witness to the narcotics unit, review with him pictures of narcotic sellers, and the results of that could be brought back to me by the officer or by the narcotics unit, and also the information should be passed on to Mr. Maltby. At the time of argument on the motion in arrest of judgment and for new trial I will hear that information.

The Court could, on a writ of coram nobis, hear testimony on additional evidence that wasn't available at the time of trial, and

elements of the crime beyond a reasonable doubt. Proof beyond a reasonable doubt is an indispensable ingredient of due process in a criminal case.[5] *In re Winship,* 397 U.S. 358 (1970) ; *United States v. Johnson,* 433 F.2d 1160 (D.C. Cir. 1970) ; *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973) ; *Commonwealth v. Simmons,* 233 Pa. Superior Ct. 547, 336 A.2d 624 (1975). Although a single comprehensive definition of reasonable doubt has never been satisfactorily formulated,[6] it is clear that the evidence at a criminal trial must do more than raise a suspicion of guilt, and that conviction cannot be based upon evidence consistent with both innocence and guilt. *United States v. Ortiz,* 445 F.2d 1100 (10th Cir. 1971), *cert. denied,* 404 U.S. 993 (1970). *See also United States v. Bilotti,* 380 F.2d 649 (2d Cir. 1967), *cert. denied,* 389 U.S. 944 (1967) (reasonable doubt is doubt that would cause one to hesitate to act) ; *United States v. Interstate Engineering Corp.,* 288 F. Supp. 402 (D.N.H. 1968) (the requirement of proof beyond reasonable doubt means the jury must be persuaded to a moral certainty as it would want to be persuaded about the most important concerns of life) ; *Commonwealth v. Banks,* 454 Pa. 401, 411, 311 A.2d 576, 581 (1973) (reasonable doubt is "the kind of doubt that would restrain a reasonable man or woman

---

if such evidence becomes available as a result of the witness reviewing pictures then a writ of coram nobis could be filed orally, and, at that time, I could hear additional testimony and rethink my decision in this case. In the interim, the defendant stands committed."

5. "Lest there remain any doubt about the constitutional stature of the reasonable doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship, supra* at 364.

6. 9 J. Wigmore, Evidence 325 (3d ed. 1940) ; D. McCormick, Evidence 799 (2d ed. 1972).

604

from acting in a matter of great importance to himself or herself").

In the present case, as the Commonwealth notes, the trial judge did say he was "convinced beyond a reasonable doubt."[7] However, his other statements show that in making this statement, he was not defining "reasonable doubt" as the cases have required.

In *Commonwealth v. Oglesby*, 438 Pa. 91, 263 A.2d 419 (1970), the defendant was charged with carrying a concealed deadly weapon. When arrested he had in his possession a yellow-handled straight razor with a folding blade six inches long. He testified that he was a barber and was going to shave a customer who had injured himself and was unable to come to the barber shop. This testimony if believed would have shown that the defendant was not guilty of the offense charged since the statute required the weapon to be carried "with the intent . . . unlawfully . . . to do injury to any other person." *Id.* at 93, 263 A.2d at 420. The trial judge, sitting without a jury, adjudged the defendant guilty and then asked for his prior criminal record. After examining the record, the judge said: "I just had a feeling on this. I could have decided it, perhaps, either way . . . I had a little feeling on this and it turns out he has a record a mile long . . . If I found that you had no record, that your story was unquestionably true, then I could have reconsidered my judgment and found you not guilty, . . ." *Id.* at 94, 263 A.2d at 420. On appeal the Supreme Court declared that such a colloquy mandated reversal. It found that the trial judge had rendered a conditional decision, i.e., one subject to change depending on the content of material not admitted into evidence. From this the court concluded: "The trial judge did have doubt about appellant's guilt and the doubt was dispelled only after considering appellant's record. As such, we cannot say that

7. See footnote 6, *ante.*

the trier of fact was convinced by the admissible evidence that appellant was guilty beyond a reasonable doubt. Accordingly, appellant must be awarded a new trial so that the proper standard for determining guilt will be applied." *Id.* at 94, 263 A.2d at 420-421.

As in *Oglesby*, the trial judge in the present case rendered a conditional judgment: "I'm asking that the officer take the witness to the narcotics unit, review with him pictures of narcotic sellers, and the results of that could be brought back to me . . . At the time of argument on the motion in arrest of judgment and for a new trial I will hear that information. The court could, on a writ of coram nobis, hear testimony on additional evidence that wasn't available at the time of trial, . . . and, . . . I could hear additional testimony and rethink my decision in this case. In the interim, the defendant stands committed." Therefore, just as the Supreme Court did in *Oglesby*, we should find here that the trial judge did have reasonable doubt when he found appellant guilty, and remand for a new trial.

HOFFMAN and CERCONE, JJ., join in this opinion.